Sheridan Stein, Plaintiff-Appellee, v. J. Theodore Lindquist and N. Henry Hogstrom, d/b/a Lind-Hog Machine Company, Defendants, and Ohio Casualty Insurance Company, Garnishee-Defendant and Appellant.

Otto W. Barnes and John M. Long, Intervening Petitioners and Appellees, v. Ohio Casualty Insurance Company, Respondent-Appellant.

Gen. No. 50,373.

First District, First Division.

February 18, 1966.

Berchem, Schwantes & Thuma, of Chicago, for appellant.

John G. Phillips, of Chicago (Sidney Z. Karasik, of counsel), for plaintiff-appellee.

Otto W. Barnes, of Chicago (Sidney Z. Karasik, of counsel), for intervenor-petitioner-appellee Otto W. Barnes and defendant-appellees.

Clarence M. Dunagan, of Chicago, for intervenor-petitioner-appellee John M. Long.

MR. JUSTICE MURPHY delivered the opinion of the court.

Garnishee-defendant, Ohio Casualty Insurance Company, appeals from judgments entered against it totaling $15,000. The garnishment judgments are based on plaintiff's unpaid personal injury action judgment against the insureds of the garnishee-defendant.

Plaintiff, Sheridan Stein, was injured when a hoist collapsed while he was using it. He brought suit against defendants, J. Theodore Lindquist and N. Henry Hogstrom, d/b/a Lind-Hog Machine Company, owners of the premises on which he was injured. Ohio Casualty, the O. L. T. insurer of the premises, denied coverage under an elevator exclusion in its policy, and defendants Lindquist and Hogstrom were required to employ counsel to defend the action. Lindquist retained Otto W. Barnes and Hogstrom retained John M. Long.

342

In a nonjury trial of the personal injury action, judgment was entered on July 17, 1963, in favor of plaintiff Stein for $10,000. The instant garnishment proceedings are grounded on this judgment. Barnes and Long, in separate petitions, intervened to recover reasonable attorneys' fees allegedly due because Ohio Casualty failed to defend the basic action.

On September 30, 1964, judgment was entered against the garnishee-defendant in favor of plaintiff Stein for the sum of $10,000 "plus interest from the 17th day of July, 1963."

On November 4, 1964, after hearing evidence on behalf of petitioners, Barnes and Long, and the respondent, Ohio Casualty, the court entered an order finding that Ohio Casualty had refused to defend the action instituted by Stein "on the sole ground that the accident or occurrence, claim or suit did not come within the terms or coverages of the policy of insurance . . . ," and that petitioner Otto W. Barnes defended the action on behalf of defendant Lindquist, and that $2,500 would be a fair and reasonable fee for his services, and that petitioner John M. Long defended the action on behalf of defendant Hogstrom, and that $2,500 would be a fair and reasonable fee for his services. Judgments for $2,500 each were entered for both Barnes and Long against Ohio Casualty, and the instant appeal followed.

The garnishee-defendant, Ohio Casualty, contends: (1) "that the trial court erred in giving judgment against the insurer because the accident alleged in plaintiff's complaint was not covered by its policy of insurance and was expressly excluded from the coverage of its policy"; (2) "that the trial court erred in allowing interest to the plaintiff from the date of the tort judgment when it gave judgment against the insurer in the garnishment"; and (3) "that the fees allowed by the trial court to the intervening petitioners were excessive in the circumstances."

343

The instant record contains the pleadings and judgment order in the tort action, the garnishment affidavit of plaintiff, answers to interrogatories by garnishee, the intervening petitions of Barnes and Long and answers of Ohio Casualty, the insurance policy, and a transcript of the testimony offered on the question of attorneys' fees.

The affidavit for garnishment alleged the entry of the judgment on July 17, 1963, and "that there is unpaid on the judgment $10,000 and 'Legal rate until Paid.'" The answers of the garnishee-defendant to interrogatories are in the negative as to whether garnishee-defendant had any property or was indebted to the judgment debtors.

█ Initially, we consider defendant's contention that the basic occurrence was not covered by its policy of insurance. The judgment order entered on September 30, 1964, states that the court heard the arguments of counsel, and "examined the pleadings, the judgment order entered by Judge Epstein, the insurance policies and the findings of the trial court in the original tort action . . . . " Therefore, and in the absence of anything else in the record, our inquiry on this point is limited to the pleadings and judgment order in the tort action and the insurance policy.

Plaintiff's amended complaint alleges that his employer occupied a portion of the second floor at 4432 North Kedzie Avenue, Chicago, as a commercial photographic house, under a lease arrangement with Lindquist and Hogstrom; that on July 6, 1956, plaintiff and a coemployee were using a hoist located at the rear of the second floor, and plaintiff was injured when the brickwork and hoisting collapsed and fell on him, inflicting injuries of a permanent nature. The allegations of negligence are the following:

> (a) Initially constructed the above-mentioned hoist in an unsafe manner in that it did not contain adequate supporting structural members:

(b) Erected or constructed the above-mentioned hoist or crane without first securing a permit to do so from the City of Chicago;

(c) Failed to warn the plaintiff of the existence of a structural weakness of the cornice or section of said roof wherein said crane or hoist was used or connected;

(d) Failed to maintain its roof, cornices on said roof, and other attached services in a reasonably safe condition;

(e) Failed to inspect the cornices, the roof and its attached surfaces and the crane or hoist and the appurtenances thereof;

(f) Utilized defective materials or permitted the use of defective materials in the construction of said crane or hoist and further in the construction or use of bricks, mortar and other cornice substances.

The judgment order entered on July 17, 1963, in favor of plaintiff in the sum of $10,000, included in its findings: that Lindquist and Hogstrom had constructed the hoist in a negligent and unsafe manner, "in that the structure of the hoist, the building cornice, the brick work, and the mortar, were inadequate and unsafe and were the sole proximate cause of the plaintiff's injuries"; and "that the hoist did not constitute an elevator within the provisions of the ordinances of the City of Chicago relating to elevators."

The policy shows that its coverage does not apply to "elevators at the premises." In the "Conditions" of the policy, the meaning of the word "elevator" is set forth as follows:

"4. Elevator Defined. The word 'elevator' wherever used in this policy shall mean any hoisting or lowering device operated between floors or land-

ings and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery. The word 'elevator' within the meaning of this definition shall not apply to . . . (4) hoists within a building not operated through a hatchway or manually operated hoists located outside the walls of a building, . . . or, (6) escalators or conveyers used exclusively for carrying property."

An extended discussion of garnishee-defendant's authorities is not required. We agree that the coverage extended by its policy ·did not include liability for bodily injuries arising "out of the ownership, maintenance or use of any elevator at the [defendant's] premises," and this court should not rewrite the policy "or fail to give effect to part of the parties' contract." We also agree, as said in McCann for Use of Osterman v. Continental Cas. Co., 6 Ill App2d 527, 533, 128 NE2d 624 (1955) :

"If the provisions limiting liability are ambiguous or equivocal, then they should be construed most strongly against the insurer. . . . This canon of construction, however, does not authorize a distortion of language or the exercise of inventive powers for the creation of an ambiguity where none exists."

Plaintiff Stein contends that on this record both the "pleaded accident" and the "proven accident" fall within the coverage of the instant policy.

As to the "pleaded accident," plaintiff asserts that the complaint is the test of an insurer's duty to defend a complaint. In Sims v. Illinois Nat. Cas. Co., 43 Ill App2d 184, 193 NE2d 123 (1963), where, in referring to an annotation in 50 ALR2d 458, the court said (p 191) :

"At the outset of the annotation the rule is announced as follows:

"It appears to be well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action."

Cited in support of this statement are cases from Illinois and many other states indicating a wide acceptance of the rule. In Appleman Ins. Law & Practice, Vol 7A, Sec 4683, page 436, the rule is stated as follows:

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff."

Thus, according to the foregoing, the generally recognized doctrine is that the insurer is under a duty to defend a suit against an insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy. And while there is some conflict of authority, the majority of decisions of the courts which have passed on the question adhere to the general rule even though the insurer's investigation discloses a conflict between the allegations of the complaint and the actual facts as known to or ascertainable by the insurer. Typical of the latter cases is Lee v. Aetna Cas. & Surety Co., 178 F2d 750 (NY) where the court said:

"This language means that the insurer will defend the suit, if the injured party states a claim which, qua claim, is for an injury 'cov-

ered' by the policy; . . . and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' "

In Rom v. Gephart, 30 Ill App2d 199, 173 NE2d 828 (1961), the court said (p 207):

"In this State it is the law that where the cause of action stated is within the coverage provided by the policy it is the insurer's duty to defend, and that where the complaint states different causes of action or theories of recovery, one of which is within the coverage and others which may not be, the insurer is bound to defend the ones which would be within the coverage of the policy."

■ From the foregoing guidelines, it follows that if the allegations of the complaint here include a state of facts within the coverage of the policy, "irrespective of the insured's ultimate liability to the plaintiff," and absent anything to the contrary in the record, plaintiff's "pleaded accident" would be sufficient to prove a prima facie basis for a garnishment judgment, and any doubt will be resolved in favor of the insured.

As to the "proven accident" theory, plaintiff asserts, "the findings of the trial court support the tort judgment and indicate that the trial court found an evidentiary basis for the allegations of the complaint that the garnishee's insured, Lindquist and Hogstrom, were guilty of negligence in the maintenance and operation of their premises so as to bring the case within the provisions of the 'Premises—Operations' insuring agreements of the policy, . . . ."

■■ We are not persuaded that the "non-coverage" asserted by garnishee-defendant applies here. At the garnishment trial, measured by the allegations in plain-

348

tiff's amended complaint or by the findings of the trial court in its judgment order, plaintiff proved a prima facie case bringing the occurrence within the coverage of the policy, and which Ohio Casualty should have defended, "irrespective of the insured's ultimate liability to the plaintiff." Whether obtained from its insured or from other sources, if Ohio Casualty was possessed of evidence which may have proved the claim against its insureds fell outside the coverage of the policy, the burden of proof rested on Ohio Casualty. As said in 17A CJS § 343, "one claiming to be excepted from general liability must bring himself clearly within the exception." The only description of the hoist is contained in plaintiff's amended complaint. There is nothing in this record to show that the hoist came within the meaning of the word "elevator," as used in the policy.

Moreover, from this record, we are required to presume as to the garnishment judgment in favor of plaintiff Stein "that the evidence was sufficient to sustain the decision, and that the omitted evidence was adverse to appellant and justified the action of the lower court." 2 ILP, Appeal and Error, § 715, p 633.

We consider next the contention of Ohio Casualty that it was error for the court to allow interest on the tort judgment from the date of its entry. Authorities cited include 15 ILP, Damages, § 64, p 484, where it is said that, as a general rule, interest cannot be recovered as a matter of right in an action of contract on an unliquidated or disputed claim. Ohio Casualty further argues that "where liability is not clear or certain, the defendant should be permitted to dispute it without the penalty of interest superadded if he is unsuccessful." To apply this rule in this case would be unfair and a hardship on the insureds. Statutory interest on the judgment of plaintiff commenced on July 17, 1963, when the trial court in the tort action rendered judgment against

Ohio Casualty's insureds. The policy provided that Ohio Casualty was "to pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, . . . because of bodily injury . . . ." The tort judgment and any statutory interest due on it obviously come within this provision. We find no merit to this contention.

Finally, we consider the contention of Ohio Casualty "that the trial court was in error in directing two fees be paid to its assureds' two attorneys, since the assureds were entitled to one, and only one, defense under its policy of insurance." Petitioners Barnes and Long asserted "while the insurance company owed only one defense to its insured—which it failed to provide—it was not unreasonable, indeed it was necessary, for the insureds, sued individually as well as jointly, to retain separate lawyers. The presentation of a single defense would not preclude the use of several lawyers. . . . where the insured defendants had dissolved their partnership before the accident and before suit, and had developed adverse, even hostile interests in respect to the defense of the matter, it was necessary for the defendants to have retained separate lawyers. . . . Such decision should not be disturbed unless palpably against the weight of the evidence; i. e., unless an opposite conclusion is compelled."

██ Although the policy names both Hogstrom and Lindquist as the insureds, we do not believe this record justified or required the services of a separate lawyer for each defendant. It was a single occurrence, and the liability asserted by the amended complaint against both defendants was not divisible or dependent upon facts which did not apply to both defendants equally. Any personal differences between the defendants could not be asserted to lessen their liability in plaintiff's action. We have examined the testimony of the petitioners and the

expert testimony offered on behalf of Ohio Casualty and conclude that the trial court was in error in awarding judgments totaling $5,000 for attorneys' fees to the petitioners Barnes and Long. In our opinion, a proper and reasonable fee for the defense of the basic tort action is $2,500 to be divided between both petitioners.

For the reasons given, the judgment entered against the garnishee-defendant in favor of plaintiff Stein, for the sum of $10,000 "plus interest from the 17th day of July, 1963," is affirmed. The judgments for $2,500 each entered in favor of Otto W. Barnes and John M. Long are vacated and set aside and, pursuant to the authority given to this court in section 92(1)(e) of the Civil Practice Act (Ill Rev Stats 1965, ch 110), it is ordered that judgments be and they are hereby entered in favor of petitioner Otto W. Barnes in the amount of $1,250, and in favor of petitioner John M. Long in the amount of $1,250, against respondent, garnishee-defendant Ohio Casualty Company.

Affirmed in part, reversed in part and judgments entered here.

KLUCZYNSKI, P. J. and BURMAN, J., concur.